UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE RUBBER SHOP, INC.,d/b/a ROYAL RUBBER COMPANY, VICTOR GRABOVEZ and CLAIRE GRABOVEZ<br><br>    Plaintiffs<br><br>    vs.<br><br>BENICORP INSURANCE COMPANY and B.J. RANDALL, d/b/a B.J. RANDALL & ASSOCIATES<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CAUSE NO. 3:05-CV-279 RM<br>)<br>)<br>)<br>)<br>)<br>) |

OPINION AND ORDER

This matter comes before the court on Benicorp Insurance Company's motion to dismiss, motions to strike, and the plaintiffs' motion for an oral argument. For the following reasons, the court grants the motion to strike Victor Grabovez's affidavit and the plaintiffs' statement of material facts, grants in part and denies in part the motion to dismiss, denies the motion to strike the punitive damages portion of the complaint, and denies the plaintiffs' motion for an oral argument.

STANDARD OF LAW

Complaints initiate the litigation but need not cover everything necessary for the plaintiff to win; factual details and legal arguments come later. A complaint suffices if any facts consistent with its allegations, and showing entitlement to prevail, could be established by affidavit or testimony at a trial. The consistency proviso is why some complaints may be dismissed pronto: litigants may plead themselves out of court by alleging facts that defeat recovery.

Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005) (quotations and citations omitted). A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, not its underlying merits, *see* Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990), and the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiffs. Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001). Dismissal under Rule 12(b)(6) is proper only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief, Szumny v. American Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001), and the defendant bears the burden of showing the plaintiff has either pleaded facts that show he is not entitled to relief, Doe v. Smith, 429 F.3d at 708, or failed to allege a claim upon which relief can be granted. Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

FACTS

As an initial matter, the plaintiffs filed a statement of material facts in response to the motion to dismiss, which included an affidavit from Mr. Grabovez. Benicorp moves to strike these submissions because they are "not part of the administrative record upon which Benicorp based its final benefits determination." Benicorp's Brief at p.2. Plaintiffs assert that matters outside the complaint submitted in response to a Rule 12(b)(6) motion automatically convert such motion to one under Rule 56. The court grants the motion to strike, but not for Benicorp's reasons.

2

"As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint," Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002), and "documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss." Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002). The plaintiffs' position assumes the court must convert a Rule 12(b)(6)motion to one under Rule 56 upon the mere filing of material outside of the complaint, but the court must do so only if the material is not excluded. FED. R. CIV. P. 12(b). The plaintiffs don't present a sufficiently compelling reason to include the material, so the court grants the Benicorp's motion to strike, and excludes the extraneous material.

Thus, the court derives the following facts from the complaint and regards them as true with all reasonable inferences drawn in the plaintiffs' favor. The Rubber Shop, Inc. d/b/a Royal Rubber is a small company located in South Bend, Indiana that employs six to ten employees, including Mr. Victor Grabovez, who serves full-time as the company's president, chief executive officer, and majority share owner. Mr. Grabovez lives spring through fall in South Bend with his wife, Ms. Claire Grabovez. In the winter, the Grabovezes live at their condominium in Marco Island, Florida.

Benicorp Insurance Co. is an Indiana corporation with its principal place of business located in Indianapolis. B.J. Randall d/b/a B.J. Randall & Associates is also an Indiana resident, and serves as an insurance agent who, at least in part,

3

sells Benicorp's insurance products.  During all times relevant to this action, Mr. Randall served simultaneously as Royal Rubber's and the Grabovezes' insurance agent of record.

Sometime before February 1, 2000, Mr. Randall met with the Grabovezes, and/or other Royal Rubber representative to discuss entering into an insurance contract with Benicorp to provide group medical insurance for the employees of Royal Rubber. Mr. Grabovez specifically asked Mr. Randall whether his living in Florida for the winter would be a problem under the proposed medical coverage. Mr. Randall conferred with Benicorp representatives, then assured Mr. Grabovez that he would be covered under the proposed insurance plan, and indicated that his not participating in the medical plan might actually harm Royal Rubber's chances of getting the proposed insurance plan. Based on those representations, Royal Rubber entered into the proposed insurance contract for group medical coverage.

Benicorp's medical insurance coverage of Royal Rubber's employees began on February 1, 2000. Each employee was issued a certificate booklet outlining the group benefits available. For the 2001 and 2002 policy years, Benicorp issued new certificate booklets (language from which is copied into the complaint and addressed below), and each booklet contained the same or similar provisions as the 2000 version.

Mr. Grabovez suffered a heart attack in 2002. After emergency open heart surgery and subsequent medical treatment, Mr. Grabovez submitted more than

$200,000 worth of medical insurance claims to Benicorp. Benicorp denied all of Mr. Grabovez's medical insurance claims because it determined Mr. Grabovez was never a "full-time employee" of Royal Rubber, a required status for the contracted medical coverage. Benicorp then terminated Mr. Grabovez's participation in the insurance plan retroactively to February 1, 2000.

Mr. Grabovez followed the certificate booklet's instruction by contacting the Indiana Department of Insurance to dispute the treatment he received from Benicorp. The Indiana Department of Insurance refused to hear his complaints because the disputed claim arose under an ERISA plan, so Royal Rubber and the Grabovezes filed, and subsequently amended, their complaint in this case.

## ANALYSIS

Benicorp attacks the amended complaint on various grounds, and moves to dismiss: the state law promissory estoppel, fraud, and course of dealing claims contained in counts III, IV, and IX, as asserted against Benicorp; the ERISA breach of fiduciary duty claim in count II; the ERISA promissory estoppel claims brought in counts III and IX; the ERISA fraud claim brought in count IV; and any ERISA denial of benefits brought by Royal Rubber. The plaintiffs, in a consolidated response, argue against each of these propositions.

### STATE LAW CLAIMS

Benicorp seeks dismissal of what it characterizes as two state law claims for promissory estoppel (in counts III and IX), two state law claims for fraud (in count

IV), and one state law claim for course of dealing (in count IX) because they are preempted by ERISA. When a court faces this type of preemption issue:

> [t]he statute provides the starting point for [the court's] analysis. Section 514(a) [29 U.S.C. § 1144(a)] says that ERISA shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. The trick, as the Court explained in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645 (1995), is to determine how close a relation the state law must have to the plan. In Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), the Court held that [a] law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. It went on to stress that ERISA does not preempt only state laws specifically designed to affect employee benefit plans, or only state laws dealing with the subject matters covered by ERISA. Instead, as the Court reiterated later in Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plans regulation would be exclusively a federal concern.

McDonald v. Household Int'l, Inc., 425 F.3d 424, 428 (7th Cir. 2005) (quotations, citations, and parallel citations omitted).

While ERISA's preemption provisions are expansive, the party asserting the preemption defense "bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." De Buono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. 806, 814 (1997) (quotations and citations omitted). This is especially true for areas traditionally left to the states for regulation. Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d 765, 775 (7th Cir. 2002). For the court to determine "whether the normal presumption against pre-emption has been overcome in a particular case, [the court] must go beyond the unhelpful text and the frustrating difficulty of defining its key term,"

6

De Buono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. at 813-814 (quotations and citations omitted), and " look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." Egelhoff v. Egelhoff, 532 U.S. 141, 147 (1997) (quotations and citations omitted); *see also* Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d at 776, n.8 ("we join the First Circuit in concluding that when the nexus between a state law and ERISA is less than clear, federal courts are required to evaluate the law in light of ERISA's statutory objectives—regardless of which category of preemption the state law might fall under.").

In short, the court must decide whether the fraud claim brought against Benicorp are of the type Congress intended to supplant when it passed ERISA, and also what effect the law upon which these claims are brought has on ERISA plans, all the while keeping in mind ERISA's stated objectives:

> to protect . . . the interests of participants . . . and their beneficiaries, by requiring the disclosure and reporting . . . of financial and other information . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to the Federal courts . . . and by improving the equitable character and soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring termination insurance.

Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d at 774 (quoting 29 U.S.C. § 1001(b)-(c))(quotations and citations omitted). For this purpose:

>   the Supreme Court has identified at least three instances where a state law can be said to have a connection with or reference to employee benefit plans, when it (1) mandates employee benefit structures or their administration, (2) binds employers or plan administrators to particular choices or precludes uniform administration practice, thereby functioning as a regulation of an ERISA plan itself, and (3) provides an alternate enforcement mechanism to ERISA.

Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d at 775 (quotations and citations omitted).

Benicorp hasn't carried its burden to show that ERISA preempts the plaintiffs' state law fraud claims found in count IV. For preemption to apply, there must be an ERISA plan in existence at the time of the alleged harm: otherwise there can be no ERISA plan to "relate to," and thus no preemption. Benicorp's alleged fraud occurred before and/or during the formation of the very contract that established any ERISA plan at issue. At that time, there were no participants, beneficiaries, fiduciaries, or a plan administrator because there was no ERISA plan. Thus, the plaintiffs' state law fraud claims cannot be premised on a law Congress intended to supplant when it created ERISA (which governs ERISA plans exclusively), do not implicate ERISA's goals of protecting participants and beneficiaries (as there were none), and do not fall within one of the three instances identified as requiring preemption. The issue may appear differently at trial or at the summary judgment stage, but the pleadings do not demonstrate preemption of the common law fraud claims.

Benicorp has carried its burden in regards to plaintiffs' state law promissory estoppel claims (found in count III and IX) and Royal Rubber's course of dealing (found in count IX). In support of count IX, Royal Rubber cites <u>Independent Distrib. Coop. USA v. Advanced Ins. Brokerage of Am.</u>, 264 F. Supp. 2d 796 (S.D. Ind. 2003), for the proposition that an employer can sue a plan administrator under state law to enforce a promise to pay its employees' insurance claims.[1] However, that case doesn't help Royal Rubber's position because the holding addressed a state law fraud claim, and explicitly rested on the employer's not suing for enforcement of benefits under an ERISA plan. <u>Independent Distrib. Coop. USA v. Advanced Ins. Brokerage of Am.</u>, 264 F. Supp. 2d at 804 ("[plaintiff] does not contend that any of the Plan's terms have been breached; nor does it seek to enforce or modify the terms of the Plan."). Here, the allegations in count IX clearly seek enforcement of the Plan's terms based on a course of dealing that Royal Rubber pay premiums and Benicorp pay the insurance claims of Royal Rubber's employees and Benicorp's representations that it would pay the claims of Royal Rubber's employees. Resolving these claims would require the court to review, interpret, and apply the terms of an ERISA plan to determine the propriety of the denial of any claims. Count IX's state law course of dealing and promissory estoppel claims attempt to serve as an alternative enforcement mechanism to

---

[1]The plaintiffs offer no support for a state law promissory estoppel claim under count III, but merely label their argument "Estoppel Claim is not Pre-Empted by ERISA and Satisfies all Required Elements." In light of the plaintiffs' lack of argument and recognizing that count III validly contains a claim under ERISA, the law requires the court to find any state law claim for promissory estoppel alleged in count III be preempted and dismissed.

ERISA (specifically a § 1132(a)(1) action for wrongful denial of benefits), conflict with Congress's intent to create a uniform administration of employee welfare plans, and are preempted. Benicorp's remaining argument for dismissal of count IX is addressed below.

*FEDERAL CLAIMS*

Benicorp also moves to dismiss the ERISA breach of fiduciary claim in count II, the ERISA promissory estoppel claim in count III, the ERISA common law fraud claim found in count IV, and the ERISA promissory estoppel claim in count IX.

Benicorp says the ERISA claim for breach of fiduciary duty found in count II because merely duplicates the ERISA claim for denial of benefits claim contained in count I. Benicorp argues ERISA limits the plaintiffs' ability to plead both claims because in Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court indicated a court should not entertain a breach of fiduciary duty claim asserted under 29 U.S.C. § 1132(a)(3) when a viable claim for wrongful denial of benefits exists under 29 U.S.C. § 1132(a)(1)(B). Varity Corp. v. Howe, 516 U.S. at 515. ("the statute [§ 1132(a)(3)] authorizes '*appropriate*' equitable relief [and] . . . we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief [under § 1132(a)(3)].") Yet, Varity Corp. v. Howe was decided at a procedural stage allowing a review of the evidence, and did not articulate a *per se* rule against merely pleading both claims in a complaint. The Federal Rules allow the plaintiffs to plead legally inconsistent theories, FED. R. CIV. P. 8(e), and Benicorp has not

10

provided any reason the court must preclude the plaintiffs from pleading both claims in their complaint. Dismissal of count II for this reason is improper at this stage.

Alternatively, Benicorp seeks dismissal of count II because it seeks compensatory damages, and actions under § 1132(a)(3) can only recover "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). In response, the plaintiffs acknowledge count II can only seek equitable relief (essentially conceding the issue), and this acknowledgment adequately limits the claim without further action from the court. Insofar as count II asserts a viable claim under § 1132(a)(3), it can only recover "appropriate equitable relief" as defined by ERISA.

Benicorp also seeks dismissal of the promissory estoppel claim found in count III. Initially, Benicorp acknowledges that certain facts, if proven, could entitle a plaintiff to relief under a promissory estoppel claim under ERISA. *See* Trustmark Life Ins. Co. v. University of Chicago Hosp., 207 F.3d 876, 883 (7th Cir. 2000). However, Benicorp asserts the ERISA promissory estoppel claim contained in count III should be dismissed because the complaint alleges facts that defeat the claim. While Rule 8 does not require a complaint include "the facts or the elements of a claim," Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002), Benicorp argues the Grabovezes have pleaded facts inconsistent with their theory of relief and thus dismissal is required. *See* Doe v. Smith, 429 F.3d at 708 ("The consistency proviso is why some complaints may be dismissed pronto: litigants

11

may plead themselves out of court by alleging facts that defeat recovery."). The court disagrees.

For a claim for estoppel in the ERISA context, "four elements must always be present: (1) a knowing representation, (2) made in writing, (3) with reasonable reliance on that misrepresentation by the plaintiff, (4) to her detriment." Trustmark Life Ins. Co. v. University of Chicago Hosp., 207 F.3d at 883. If a plaintiff proves all four elements, "the promise will be enforced in order to avoid injustice." Id. However, for purposes of estoppel "oral representations of an ERISA plan may not be relied upon . . . when the representation is contrary to the written terms of the plan and those terms are set forth clearly." Kamler v. H/N Telecomm. Servs., Inc., 305 F.3d 672, 679 (7th Cir. 2002) (quotations and citations omitted). This "rule is not applicable . . . [when] Plan documents are not free from ambiguity." Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 588 (7th Cir. 2000).

Count III contains the plan's language. The plaintiffs quote two portions of the plan, one of which deals with "eligibility" and the other with "termination." The eligibility portion explains that an employee is eligible for coverage if the employee "work[s] full-time . . . at [the insured employee's] normal place of work in the normal business of [the insured employee's] Employer." The plan's termination portion states the same employee will be terminated from the plan if "[the insured employee] no longer meet[s] the definition of Full-time Employee," which the plan defined as "an individual who is working full-time . . . in the business of an

12

Employer. The work must take place other than at the Employee's home . . . ." Thus, it would appear that Mr. Grabovez would be eligible for coverage if, as the complaint alleges, his normal place of work was his home, and at the same time be terminated from coverage for not meeting the definition of a full-time employee. If these two terms conflict and create an ambiguity, the Grabovezes could prevail on their promissory estoppel claim based on the plan's language and Benicorp's alleged oral representations. Whether the Grabovezes will prevail on this claim is irrelevant at this stage; it is enough they have pleaded a claim upon which relief could be granted.

Benicorp also moves to dismiss any federal common law for fraud in count IV because the court of appeals already found 29 U.S.C. § 1132 an adequate vehicle to address a plaintiff's allegations of misrepresentation or deceit found in an ERISA plan's documents. *See* Anderson v. Chrysler Corp., 99 F.3d 846, 856 (7th Cir. 1996) ("[plaintiffs] argue that ERISA contains an 'implied' right of action for deceit and misrepresentation. We cannot agree."). The plaintiffs don't address Anderson v. Chrysler Corp., or provide any reason why that case does not control. Rather, they again cite Independent Distrib. Coop. USA v. Advanced Ins. Brokerage of Am., 264 F. Supp. 2d 796 (S.D. Ind. 2003), for the proposition that ERISA doesn't always preempt state law fraud claims. The plaintiffs do this without adequately explaining how that case affects an ERISA common law fraud action. In light of the court of appeals' statement in Anderson v. Chrysler Corp., the plaintiffs may not proceed on their ERISA fraud claims.

As already discussed, ERISA preempts count IX. Benicorp argues that if count IX is preempted, it must also be dismissed because Royal Rubber doesn't have standing to bring such claims against Benicorp under ERISA. While the parties haven't addressed this issue, count IX can only be read to contain a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). The court agrees with Benicorp that Royal Rubber does not have standing to bring such claim. 29 U.S.C. § 1132(a)(1) (identifying only a participant and beneficiary as parties with standing to bring a claim under the section); *see also* Southern Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill., 326 F.3d 919, 921-922 (7th Cir. 2003) (29 U.S.C. § 1132(a)(1) "limits the rights to sue to participants and beneficiaries"). By explicitly identifying Royal Rubber as Mr. Grabovez's employer, Royal Rubber has pleaded facts inconsistent with any possible relief under 29 U.S.C. § 1132(a)(1) and dismissal of count IX is appropriate.[2] Doe v. Smith, 429 F.3d at 708.

MOTION TO STRIKE PUNITIVE DAMAGES REQUEST

Finally, Benicorp filed a motion to strike the punitive damages portion of the amended complaint because ERISA does not provide for punitive damages. Because the plaintiffs' common law fraud claim stands, there exists facts upon which punitive damages could be awarded. Durham ex rel. Estate of Wade v. U-Haul Int'l, 745 N.E.2d 755, 762 (Ind. 2001) ("Exemplary or punitive damages, the terms exemplary and punitive being synonymous, are damages allowed as a

---

[2] The parties have not briefed, nor does the complaint explicitly identify, Royal Rubber's role in the remaining ERISA claims; thus the court declines to dismiss those claims at this time.

punishment, or by way of example, to deter others from the like offences, for torts committed with accompanying fraud, malice, or oppression." (quoting and citing State ex rel. Scobey v. Stevens, 2 N.E. 214, 216 (1885))). The court declines to strike the punitive damages portion of the complaint.

CONCLUSION

For these reasons, the court GRANTS the Benicorp's motion to strike Mr. Grabovez's affidavit and the plaintiffs' designation of material facts [Doc. No. 45]; GRANTS in part and DENIES in part Benicorp's motion to dismiss [Doc. No. 36]; DENIES the motion to strike the punitive damages portion of the complaint [Doc. No. 34]; and DENIES the plaintiffs' motion for oral argument as moot [Doc. No. 42]. In light of these rulings, the court LIFTS the stay imposed on the case.

SO ORDERED.

ENTERED:  February 13, 2005

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court